UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ———————————————— x | | |
| In re TOMMY HILFIGER SECURITIES LITIGATION | : : : | Lead Case No. 1:04-CV-07678-SAS |
| ———————————————— | : | **ELECTRONICALLY FILED** |
| This Document Relates To: | : : | CLASS ACTION |
| ALL ACTIONS. | : : | |
| ———————————————— x | | |

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT
PROCEEDS

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................1

II.   HISTORY AND BACKGROUND OF THE ACTION .....................................4

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT .........................................4

    A.   The Law Favors and Encourages Settlements ..........................................4

    B.   The Settlement Is Procedurally Fair ........................................................5

    C.   The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements ........................................................................6

    D.   The Settlement Satisfies the Second Circuit Criteria for Approval ........................7

        1.   The Complexity, Expense and Likely Duration of the Litigation Justifies the Settlement ................................................................7

        2.   The Reaction of the Class to the Settlement ................................8

        3.   The Stage of the Proceedings and Discovery Completed...........................9

        4.   The Risk of Establishing Liability .............................................10

            a.   Defendants' Scienter Defenses .....................................11

            b.   Defenses to Loss Causation .........................................12

        5.   The Considerable Risk of Establishing Damages......................13

        6.   The Risks of Maintaining the Class Action Through Trial......................15

        7.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................15

        8.   The Ability of the Defendants to Withstand a Greater Judgment..............17

IV.   THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ..........................17

V.   THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED................................................19

    A.   Numerosity, Commonality and Typicality ...........................................19

**Page**

B.     Adequacy of Representation ...................................................................20

C.     Predominance of Common Issues and Superiority ................................21

VI.     CONCLUSION ........................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231 (1997)..............................................................19, 20, 21

*Beecher v. Able*,
   575 F.2d 1010 (2d Cir. 1978).............................................................................18

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ..............................................................................15

*Carpe v. Aquila, Inc.*,
   No. 02-0388-CV-W-FJG, slip op.
   (W.D. Mo. Mar. 23, 2005)..................................................................................14

*Chatelain v. Prudential-Bache Sec.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) .............................................................10, 15

*Cross v. 21st Century Holding Co.*,
   No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283
   (S.D.N.Y. Feb. 18, 2004) ...................................................................................20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)...............................................................................5, 9

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)...............................................................5, 6, 10, 17

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627 (2005)...............................................................12

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003)...............................................................................12

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185, 96 S. Ct. 1375 (1976)..................................................................11

*Heyer v. N.Y. City Hous. Auth.*,
   No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089
   (S.D.N.Y. Apr. 28, 2006)....................................................................................10

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
   (S.D.N.Y. Oct. 24, 2005) .....................................................................................8

**Page**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987) ..................................................................15

*In re Alloy, Inc. Sec. Litig.*,
    No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129
    (S.D.N.Y. Dec. 2, 2004) ..............................................................................5

*In re Am. Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .....................................................10, 18

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
    (S.D.N.Y. Apr. 6, 2006) ...........................................................................11, 16

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431
    (E.D.N.Y. Nov. 15, 2005) ..............................................................................4

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) .........................................................9, 10

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .........................................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................7, 9, 18

*In re Holocaust Victim Assets Litig.*,
    413 F.3d 183 (2d Cir. 2001) ..........................................................................18

*In re Host Am. Corp. Sec. Litig.*,
    No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418
    (D. Conn. Oct. 18, 2007) ...............................................................................20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090
    (S.D.N.Y. Sept. 29, 2003) ...............................................................12, 13, 16

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................5, 6, 8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ....................................................................4

**Page**

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423
   (S.D.N.Y. Dec. 20, 2007)..................................................................6

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ......................................................11

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.),
   *aff'd*, 117 F.3d 721 (2d Cir. 1997) .......................................... *passim*

*In re Salomon Analyst Metromedia Litig.*,
   236 F.R.D. 208 (S.D.N.Y. 2006) .....................................................21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
   No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093
   (S.D.N.Y. May 1, 2008).........................................................8, 9, 17

*In re Time Warner Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993)................................................................11

*In re Veeco Instruments, Inc., Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) .....................................................20

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
   (S.D.N.Y. Nov. 7, 2007) ........................................................ *passim*

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001).............................................................21

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004).............................................................17

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985),
   *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................................14

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005)..........................................17, 18

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)...............................................................4

**Page**

*Kaufman v. Motorola, Inc.*,
No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627
(N.D. Ill. Sept. 21, 2000) ...................................................................................................14

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ..........................................................................................11

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).........................................................................17, 19

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ........................................................................................7

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)............................................................................................5, 16

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000).................................................................................................11

*Plummer v. Chem. Bank*,
668 F.2d 654 (2d Cir. 1982)...................................................................................................9

*Schwartz v. Novo Industri A/S*,
119 F.R.D. 359 (S.D.N.Y. 1988) ........................................................................................10

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................................................7, 8

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
(S.D.N.Y. Jan. 31, 2007).........................................................................................................4

*Teachers' Ret. Sys. of La. v. A.C.L.N.*,
No. 01-CV-11814 (MP), 2004 WL 1087261
(S.D.N.Y. May 14, 2004).....................................................................................................10

*TSC Indus. v. Northway, Inc.*,
426 U.S. 438, 96 S. Ct. 2126 (1976)...................................................................................12

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)......................................................................................4, 16, 17

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)...............................................................................................4, 5

**Page**

*Whalen v. Hibernia Foods PLC*,
    No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489
    (S.D.N.Y. Aug. 1, 2005) ...........................................................................................11

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)...............................................................................4

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ...............................................................................11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B)(i) ...............................................................................................20

Federal Rules of Civil Procedure
    Rule 23(a)............................................................................................3, 19, 21
    Rule 23(a)(1)-(3) .............................................................................................19
    Rule 23(a)(4) ..................................................................................................20
    Rule 23(b)(3)..............................................................................................1, 21
    Rule 23(e).....................................................................................................1, 4

**SECONDARY AUTHORITIES**

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
    §11.45..............................................................................................................9

Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder
Class Actions:  Filings Return to 2005 Levels as Subprime Cases
Take Off; Average Settlements Hit New High* (NERA 2007) ........................................16

Laura E. Simmons, Ellen M. Ryan, *Securities Class Action Settlements,
2006 Review and Analysis* (Cornerstone Research 2007)............................................16

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs City of Roseville Employees' Retirement System and Maritime Association—I.L.A. Pension Fund, by and through their counsel ("Lead Counsel"), respectfully move this Court for an order approving the proposed settlement of the above-captioned class action (the "Action"), certifying the Class for settlement purposes, and approving the proposed Plan of Allocation of settlement proceeds, each of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated July 16, 2008 (the "Preliminary Approval Order").

## I.     PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation of Settlement dated June 18, 2008 (the "Stipulation"), the Defendants have caused to be paid Sixteen Million Dollars ($16,000,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims. The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs and for attorney fees and expenses. The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"). Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") at page 4.

Lead Counsel respectfully submits that this Settlement is an excellent recovery for the Class under the circumstances, given the serious obstacles to recovery. This Settlement was reached by Lead Counsel, with the support of the Lead Plaintiffs, as a result of their creative and aggressive

litigation efforts, and following mediation before a retired federal district judge. When viewed in light of the risks that Defendants could prevail at summary judgment or at trial, based on their defenses to loss causation, scienter and damages, the Settlement is a substantial result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where much of the documentary evidence consists of complex tax calculations. As fully discussed below and in the Declaration of Robert M. Rothman in Support of (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorney Fees and Expenses ("Rothman Decl."), submitted herewith, the significant risks involved in taking this Action further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

On July 16, 2008, the Court entered its Preliminary Approval Order, which directed that a hearing be held to determine the fairness, reasonableness and adequacy of the Settlement (the "Settlement Hearing"). Pursuant to the Preliminary Approval Order, the Notice was mailed to over 191,950 potential Class Members commencing on July 31, 2008.[1] The Summary Notice was also published in the national edition of *Investor's Business Daily* on August 6, 2008. *See* Sylvester Decl., ¶13.

The Notice, attached to the Sylvester Declaration as Exhibit A, contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including: (i) Lead Plaintiffs' estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Class

---

[1]    *See* ¶¶3-11 of the Declaration of Carole K. Sylvester Re A) Mailing of the Notice of Pendency and Proposed Settlement of Class Action and the Proof of Claim and Release Form and B) Publication of the Summary Notice ("Sylvester Decl."), which is submitted herewith.

Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt-out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms the wisdom of Lead Plaintiffs' decision to resolve the Action against the Defendants in exchange for the payment of the Settlement Amount. As of the date preceding the filing of this Memorandum, which is before the deadline for the submission of objections or requests for exclusion, no objections have been filed to the amount of the Settlement or the Plan of Allocation. Only seven Class Members have submitted valid requests for exclusion from the proposed Settlement. Therefore, the reaction of the Class strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable and adequate.[2]

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiffs and Lead Counsel believe that the Settlement is eminently fair, reasonable and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant final approval of this Settlement. In addition, the proposed Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Class. Finally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiffs' damage consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

---

[2] If any timely objections are received, they will be addressed in a reply memorandum, which will be filed and served on October 8, 2008.

- 3 -

## II.    HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rothman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.    The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court.  A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007).  While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *16 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *3-*4 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *13-*14 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.).  Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical

- 4 -

length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *17. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted).

## B.    The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 U.S. Dist. LEXIS 24129, at *5 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long

as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, with the assistance of a retired federal district judge serving as mediator. Rothman Decl., ¶¶5-8, 56. In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiffs' claims – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. Further, Lead Counsel reviewed over 350,000 pages of documents produced by the Defendants. All of these considerations confirmed the reasonableness of the Settlement. *See* Rothman Decl., ¶¶37-41. Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Group*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *In re*

*Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 93423, at *25-*26 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead Counsel, there is serious doubt that a more favorable result was possible. As such, the Settlement clearly warrants this Court's final approval.

### D.    The Settlement Satisfies the Second Circuit Criteria for Approval

#### 1.    The Complexity, Expense and Likely Duration of the Litigation Justifies the Settlement

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiffs involve numerous complex legal and factual issues relating to transfer pricing and the tax implications thereof which would require extensive additional discovery, including voluminous document review and many depositions as well as extensive expert discovery and testimony. In addition, the legal issues in this Action are equally as complex – proving falsity, materiality, scienter, causation and damages – and would also require expert testimony from both sides.

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation. Many hours of the Court's time and resources have also been spared. Even if the Class could recover a larger judgment

after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value.  *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The $16 million Settlement at this juncture results in an immediate and substantial tangible recovery without the considerable risk, expense and delay of trial.  Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.    The Reaction of the Class to the Settlement

The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12.  One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *21 (citation omitted).  Here, in response to a wide-ranging Court-approved notice program, not a single Class Member has objected, and only seven shareholders have requested exclusion from the Class.  Thus, the reaction of the Class, those affected by the Settlement, underscores the propriety of the Settlement and should provide additional comfort to this Court in approving the Settlement.  Rothman Decl., ¶72.

### 3.    The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."  *Global Crossing*, 225 F.R.D. at 458.  *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-*23 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *20-*21 (same).[3]

Here, Lead Counsel negotiated a substantial settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the Second Consolidated Amended Complaint.  Lead  Counsel reviewed scores of publicly available documents and THC's regulatory filings to gain a full and complete understanding of the Company's business.  Lead Counsel also interviewed former THC employees regarding Lead Plaintiffs' allegations.  Lead Counsel also researched the applicable law with respect to Lead Plaintiffs' claims and the

---

[3]      In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied.

Defendants' potential defenses, and consulted with forensic accountants concerning the alleged financial fraud and economists who provided advice and assistance on issues relating to class certification, damages, causation and materiality. In addition, following the denial of Defendants' motion to dismiss, Lead Counsel received and reviewed over 350,000 pages of non-public documents produced by THC. Rothman Decl., ¶36. Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. of La. v. A.C.L.N.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view of the strengths and weaknesses of their cases'") (citation omitted); *see also Heyer v. N.Y. City Hous. Auth.*, No. 80 Civ. 1196 (RWS), 2006 U.S. Dist. LEXIS 25089, at *9 (S.D.N.Y. Apr. 28, 2006) (although limited discovery was completed before settlement negotiations began, familiarity of counsel for all parties with case justifies settlement). As such, Lead Counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001); *Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992) (noting "'the absence of formal discovery has not . . . prevented consideration of settlement'") (quoting *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 362 (S.D.N.Y. 1988)). Therefore, this Court should find that this factor also supports the Settlement.

### 4.    The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *25; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that Lead Plaintiffs could survive Defendants' motions for summary judgment, it is also clear that ultimate success is not assured, and this

substantial Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiffs faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on their claims, Lead Plaintiffs must demonstrate that Defendants made misstatements or omissions of material fact with scienter in connection with the sale or purchase of securities – that Defendants intentionally engaged in this conduct for the purpose of misleading investors.[4] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12, 96 S. Ct. 1375, 1381 n.12 (1976). Based on the defenses that Defendants have raised, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *39 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

### a.    Defendants' Scienter Defenses

Lead Plaintiffs faced significant risks in proving that the alleged misstatements were materially false or misleading. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (to

---

[4]    Proof of scienter can be established: "'(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ. 3182, 2005 U.S. Dist. LEXIS 15489, at *6 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard.

prove materiality, plaintiffs have the burden of demonstrating defendants' misrepresentations and omissions were materially false or misleading when made); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S. Ct. 2126, 2132 (1976). In their response to Lead Plaintiffs' claims, Defendants have relied upon the fact that Defendants were not charged with any crimes by the United States Attorney, and that THC's internal investigation into the facts and circumstances of the buying office commission ("BOC") issues concluded that Defendants had a good faith basis for the BOC rates. Rothman Decl., ¶59. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *11 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter). By the time the parties agreed to the proposed Settlement, Lead Counsel had come to the conclusion that the defenses raised by Defendants could have certain jury appeal, and would render the inherently difficult burden of proving all of the elements of Lead Plaintiffs' claims as to all of the Defendants even more difficult.

### b.    Defenses to Loss Causation

Even if Defendants' defenses to scienter could be overcome, Lead Plaintiffs must also make the requisite showing of loss causation. *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003) (finding that plaintiffs adequately plead loss causation and proximate causation). Lead Plaintiffs faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiffs and the Class to suffer economic loss. Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338, 125 S. Ct. 1627, 1629 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed as one of their strongest defenses that Lead Plaintiffs had not, and could not, properly account for the damages attributable to Defendants' alleged misrepresentations. Specifically, Defendants argued that THC's announcement that it had received a government subpoena concerning its tax practices and BOC rate did not reveal fraud and "contains

no corrective disclosure." Rothman Decl., ¶61. Moreover, Defendants argued that the price of the Company's stock did not move after they made several post Class Period statements that contained the true facts about their conduct. *Id*., ¶62. Although Lead Plaintiffs countered those contentions with arguments of their own: that throughout the Class Period Defendants concealed THC's improper transfer pricing scheme and reported artificially inflated financial results, and that when the market learned of these practices the inflation in the price of THC stock caused by Defendants' fraudulent statements was removed, causing economic loss to Lead Plaintiffs and the Class; and that it was not relevant that THC's announcement of receiving a government subpoena relating to its BOC rate did not admit wrongdoing because the evidence would show that the market clearly interpreted the announcement as an acknowledgement that THC had likely engaged in improper tax practices and would be subject to substantial liability (Rothman Decl., ¶¶63-64). Nevertheless, significant risk of proving damages for the entirety of the Class Period existed. *Id*., ¶65.

While Lead Plaintiffs remained confident in their ability to ultimately prove their claims and to counter any asserted affirmative defense, the risks of this Action being dismissed at the summary judgment stage, or of losing at trial, weighed against the immediate and substantial benefits of settlement, indicate that the Settlement is in the best interest of the Class.

### 5.     The Considerable Risk of Establishing Damages

Even if they successfully established liability, Lead Plaintiffs also faced substantial risk in proving the existence and the amount of damages. *See Indep. Energy*, 2003 U.S. Dist. LEXIS 17090, at \*11-\*12 (noting difficulty of proving damages in securities cases). In order to prevail on their Exchange Act claims, Lead Counsel would be required to prove that the Defendants' false and misleading statements inflated the price of THC common stock, and would also be required to prove the amount of the artificial inflation. Lead Counsel, with the assistance of their economic consultant, calculated the artificial inflation in the market price of THC common stock that in their opinion is

- 13 -

attributable to the alleged wrongdoing. This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. It also assumes that the Class Period would remain as alleged. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' rebuttals and defenses to Lead Plaintiffs' damage calculations and expert testimony. Rothman Decl., ¶¶66-67.

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Counsel already know that the Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiffs' damages model is admissible - and only then may a jury determine whether Lead Plaintiffs' or Defendants' model is more accurate. The Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, slip. op. (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony);[5] *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 U.S. Dist. LEXIS 14627, at *7 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive.[6] As a result of the

---

[5]    All unreported authorities referred to herein are attached to the Compendium of Unreported Authorities in Support of Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and Award of Attorney Fees and Expenses, submitted herewith.

[6]    *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by

aforementioned considerations, the likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *29. As a result, this factor also weighs in favor of the Settlement.

### 6.    The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance of obtaining and maintaining Class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *See Chatelain*, 805 F. Supp. at 214 ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). Absent settlement, Lead Counsel expects that Defendants would oppose class certification (as opposed to some securities class actions where the parties stipulate to certification) and they would thereafter seek to have the Class decertified if their defenses were initially unsuccessful. The Settlement avoids any uncertainty with respect to these issues.

### 7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by

---

actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

prosecution of the litigation to a successful conclusion." *Veeco*, 2007 U.S. Dist. LEXIS 85629, at

*33.   The Court need only determine whether the Settlement falls within a "'range of

reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693

("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep.*

*Energy*, 2003 U.S. Dist. LEXIS 17090, at *13 (noting few cases tried before jury result in full

amount of damages claimed).   The Second Circuit has described the "'range of reasonableness'" as

"'a range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d

at 119 (quoting *Newman*, 464 F.2d at 693).   Nevertheless, this Settlement, which represents

approximately 11% of Lead Plaintiffs' estimate of maximum provable damages, exceeds the average

recovery in shareholder litigation. *See* Laura E. Simmons, Ellen M. Ryan, *Securities Class Action*

*Settlements, 2006 Review and Analysis,* at 6 (Cornerstone Research 2007) (settlements as a

percentage of "estimated damages" averaged 2.4% in 2006); Stephanie Plancich, Ph.D., Brian

Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions:  Filings Return to 2005*

*Levels as Subprime Cases Take Off; Average Settlements Hit New High,* at 14 (NERA 2007)

(median ratio of settlements to investor losses in 2007 was 2.4%).

     Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the

Settlement provides for payment to the Class now, rather than a speculative payment many years

down the road, without any further risk to the Class. *See AOL Time Warner*, 2006 U.S. Dist. LEXIS

17588, at *44 (where the settlement fund is in escrow and earning interest for the class, "the benefit

of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").   In light of

the complex legal and factual issues typically present in securities class actions, the unpredictability

of a lengthy and complex trial and the appellate process that would most likely follow, the fairness

of a substantial settlement is clearly apparent. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).[7]

### 8.    The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463.  The fact that THC could have paid more money does not render the Settlement unreasonable, however. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that DuPont could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 U.S. Dist. LEXIS 36093, at *23 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted).  "Where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *Id.* at *23-*24.

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005).  "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney*

---

[7]    Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiffs.

*Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with damage experts, ensuring its fairness and reliability. Rothman Decl., ¶76. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39. Under the proposed Plan of Allocation, each Authorized Claimant (as defined in ¶1.1 of the Stipulation) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their THC common stock. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *39; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain

class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not one objection to the Plan of Allocation has been filed, which also supports approval by the Court. *See Veeco*, 2007 U.S. Dist. LEXIS 85629, at *40; *Maley*, 186 F. Supp. 2d at 367.

## V.     THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the Class for settlement purposes, and Lead Plaintiffs' motion for preliminary approval of the Settlement contained an extensive discussion on the appropriateness of certifying the proposed Class.[8] That portion of the preliminary approval brief is respectfully incorporated herein. The ultimate decision regarding certification rests with the Court. In its July 16, 2008 Preliminary Approval Order, the Court conditionally certified the Class for purposes of settlement. Because all the requirements for class certification have been met, *see* Federal Rules of Civil Procedure 23(a), (b)(3), and in light of the substantial benefits the Settlement confers on the Class, Lead Plaintiffs respectfully request that the Court now grant this Action final class certification for the purposes of the Settlement.

### A.     Numerosity, Commonality and Typicality

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3). Over 191,950 copies of the Notice were sent to potential Class Members who purchased THC common stock between November 3, 1999 and September 24, 2004, inclusive. *See* Sylvester Decl.,

---

[8]     The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action. The Supreme Court has expressly approved the use of this device. *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997).

¶¶3-11.  *See also Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 U.S. Dist. LEXIS 2283, at *4 (S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases exceed 100).  Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether Defendants violated the federal securities laws and whether members of the Class sustained damages as a result of the misrepresentations and/or omissions, and the extent of those damages).

In *Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250, the Supreme Court noted that the common issues test is readily met in securities cases.  *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of securities fraud litigation.").  Further, Lead Plaintiffs' claims are "typical" of other Class Members' claims because they purchased THC common stock during the period of asserted price inflation and thus have alleged damages similar to other Class Members.  *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 U.S. Dist. LEXIS 77418, at *14-*15 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

### B.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiffs to demonstrate that: (1) there is no conflict of interest between Lead Plaintiffs and the other Class Members; and (2) Lead Counsel are qualified, experienced and capable of conducting the Action.  *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *20-*21.  Here, this Court has already designated the proposed class representatives as Lead Plaintiffs pursuant to the PSLRA, which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Furthermore, Lead Plaintiffs have retained highly competent counsel with

extensive experience litigating complex securities class actions. Thus, Lead Plaintiffs and their counsel have diligently advanced the interests of the Class.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250. Here, the issues of liability and causation are common to all members of the Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in THC common stock. *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 218 (S.D.N.Y. 2006) ("[i]t is beyond dispute . . . that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities . . . common issues will predominate over individual ones").

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.

## VI.    CONCLUSION

The Settlement reached in this Action is an excellent result under the circumstances present here. For the foregoing reasons, the $16.0 million all-cash Settlement and Plan of Allocation of the

Settlement proceeds are fair, reasonable and adequate and should be granted the Court's final approval. Additionally, all the requirements for certification have been met, and Lead Counsel respectfully submit that the Court should certify the Class for settlement purposes.

DATED: September 24, 2008                    Respectfully submitted,

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             SAMUEL H. RUDMAN
                                             ROBERT M. ROTHMAN
                                             DAVID A. ROSENFELD
                                             MARIO ALBA, JR.


                                                    s/ Robert M. Rothman
                                             ─────────────────────────────
                                             ROBERT M. ROTHMAN

                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             ELLEN GUSIKOFF STEWART
                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)

                                             Lead Counsel for Plaintiffs

                                             VANOVERBEKE MICHAUD & TIMMONY, P.C.
                                             MICHAEL J. VANOVERBEKE
                                             THOMAS C. MICHAUD
                                             79 Alfred Street
                                             Detroit, MI  48201
                                             Telephone:  313/578-1200
                                             313/578-1201 (fax)

                                             Additional Counsel for Plaintiffs

C:\Program Files\DocsCorp\pdfDocs PDF\users\dscott\Import\BRF SETTLEMENT 00054329.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 24, 2008.

s/ Robert M. Rothman
ROBERT M. ROTHMAN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:rrothman@csgrr.com

# Mailing Information for a Case 1:04-cv-07678-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Eric James Belfi**
  ebelfi@labaton.com

- **William Edwards**
  wedwards@wlrk.com,CAlert@wlrk.com

- **Gregory M. Egleston**
  egleston@bernlieb.com

- **Dimitry Joffe**
  DJoffe@wlrk.com

- **Ralph M. Levene**
  rmlevene@wlrk.com,CAlert@wlrk.com

- **Robert M. Rothman**
  rrothman@csgrr.com,e_file_ny@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Catherine A. Torell**
  ctorell@cmht.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual Service List
*In re Tommy Hilfiger Securities Litigation*
Case No. 1:04-cv-07678-SAS

Michael J. VanOverbeke
Thomas C. Michaud
VanOverbeke Michaud & Timmony, P.C.
79 Alfred Street
Detroit, MI 48201